Matthew T. Christensen, ISB: 7213
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho 83703
Phone: (208) 384-8588
Fax: (208) 853-0117
mtc@angstman.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>PAVEMENT MARKINGS NORTHWEST, INC.,<br><br>Debtor. | Case No. 17-01071-TLM<br>Chapter 11 |

**DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN PREPETITION WAGES, SALARIES, AND REIMBURSABLE EMPLOYEE EXPENSES, (B) PAY AND HONOR EMPLOYEE VACATION AND SICK LEAVE, (C) REMIT WITHOLDINGS & DEDUCTIONS, AND CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE BENEFIT PROGRAMS.**

Pavement Markings Northwest, Inc., as debtor in possession ("Debtor"), submits this motion ("Motion") for entry of an order authorizing the Debtor to (a) pay certain prepetition wages, salaries, and reimbursable employee expenses, and (b) pay and honor employee medical and similar benefits (Collectively the "Employee Obligations"). In support of this Motion, the Debtor respectfully represents:

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 1
Matter: 9519-005

A. **General Background**

On August 15, 2017, the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in this Chapter 11 case. No official committee has yet been appointed by the Office of the United States Trustee.

The Debtor operates a pavement marking and fence building business. The principal place of business is located in Boise, Idaho, but projects range throughout the state of Idaho and other parts of the Northwest. As of the Petition Date, the Debtor had approximately twenty-two (22) employees. The bulk of the employees work on an hourly basis, and are seasonal employees. The administrative staff are paid on a salary basis throughout the year. Each of the affected employees are listed on the attached *Exhibit A*, and all employees are essential to the continued operation of the Debtor's business.

For the year ending 2016, the Debtor's gross income was $3,338,810.00. Due to several losses that year and previously, the Debtor's net loss after all expenses was $868,427.00. As of the Petition Date, the Debtor's outstanding debt is approximately $3,039,102.00.

B. **Categories of Claims**

The Debtor seeks by this Motion an Order allowing it to pay certain broad categories of expenses related to employee compensation and benefits.

  a. **"Employee Compensation"**: The Debtor currently has twenty-two (22) total employees (collectively the "Employees"), all of whom are full-time employees. None of the Employees is represented by a union. In the ordinary course of business, the Debtor pays Employees wages or salaries depending on the services provided by the Employee to the Debtor.

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 2
Matter: 9519-005

The Debtor also allows reimburses Employees for legitimate business expenses, and provides sick leave and paid vacation time to full-time employees. The following summarizes the various types of employee compensation offered by the Debtor (collectively, the "Employee Compensation").

    i.  **Salaries and Wages.** All Employees are paid weekly in arrears, either by direct deposit or manually issued check. The Debtor's next scheduled payroll date is on or about August 25, 2017, for the pay period from August 13, 2017 to August 19, 2017. On average, the Debtor's monthly gross payroll expense for Employees is approximately $62,000.00 (recognizing the seasonal nature of the Debtor's business, and the fact that much of the labor expense occurs between April and October each year). As of the Petition Date, the Debtor believes approximately $10,354.00 is unpaid on account of wages, salaries and other compensation earned prior to the Petition Date ("Unpaid Wages") for the time period of August 13 and August 15. Nonetheless, some Employees may be entitled to compensation for services provided before April 1, 2017, because (a) discrepancies could exist as to amounts paid; or (b) some payroll checks issued prior to the Petition Date may not have been presented for payment or may not have cleared the banking system as of the Petition Date. The Debtor does not believe that any individual Employee is entitled to Unpaid Wages exceeding the priority cap of $12,850.00 set out in § 507(a)(4) of the Bankruptcy Code, and thus seeks authority to pay any Unpaid Wages in the ordinary course of business and consistent with past practices.

    ii.  **Reimbursable Expenses.** Prior to the Petition Date and in the ordinary course of its businesses, the Debtor reimbursed Employees for approved, legitimate expenses incurred on behalf of the Debtor in the scope of the Employee's employment (the "Reimbursable Expenses"). The Debtor reimburses Reimbursable Expenses to Employees after processing and

approving expense reports containing receipts for all items to be reimbursed. Reimbursement is thus contingent on the Debtor's determination that the charges are for legitimate, reimbursable business expenses. Although the Debtor requests that Employees submit reimbursement requests promptly, circumstances sometimes cause delay. It is therefore difficult for the Debtor to precisely calculate the amount of Reimbursable Expenses outstanding as of the Petition Date. Based on historical practices, the Debtor estimates that, as of the Petition Date, approximately $1500.00 in total Reimbursable Expenses remain unpaid. Employees incurred Reimbursable Expenses as business expense on the Debtor's behalf and with the understanding that they would be reimbursed. To avoid harming Employees who incurred the Reimbursable Expenses, the Debtor requests authority to (a) continue reimbursing the Reimbursable Expenses in accordance with prepetition practices and honor any prepetition obligations related thereto; (b) modify their prepetition policies relating to expense reimbursement as they deem appropriate; and (c) pay all Reimbursable Expenses to Employees that either (i) accrued prepetition or (ii) accrue post-petition but relate to the prepetition period.

   iii. **Accrued Vacation Days.** The Debtor provides vacation time to all Full-Time Employees as a paid time-off benefit (the "Vacation Time"). Hourly employees earn 1 week paid vacation time after 1 full year of employment and 2 weeks after 5 full years of employment (so long as employment is continued without interruption). Salaried employees earn 1 week paid vacation after 1 year of employment and 2 weeks after 2 full years of employment, and 3 weeks after 7 full years of employment (so long as employment is continued without interruption).

  When an Employee elects to take Vacation Time, he or she is paid his or her regular salaried or hourly rate based on a full-time workweek. The Debtor requests that it be authorized,

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 4
Matter: 9519-005

but not directed, to continue to honor its Vacation Time policies in the ordinary course of business, and to honor and pay any prepetition amounts related that policy.

      iv.    **Accrued Sick Leave.** In addition, Salaried Employees are eligible for sick leave due to illness or injury ("Sick Leave"). No Sick Leave accrues from year to year, meaning that if it is unused on December 31, it is forfeited. The Debtor requests that it be authorized, but not directed, to continue to honor its Sick Leave policies in the ordinary course of business, and to honor and pay any prepetition amounts related to that policy.

    b.  <u>**Workers' Compensation**</u>

      i.    The Debtor provides workers' compensation insurance for its Employees at the statutorily required level ("Workers' Compensation Program"). As part of the Workers' Compensation Program, eligible Employees receive a portion of their weekly wages, up to a maximum specified by law.

      ii.    For the claims administration process to operate in an efficient manner and to ensure that the Debtor complies with applicable state law, the Debtor must continue to assess, determine, and adjudicate claims. Accordingly, the Debtor seeks authority to (a) continue to maintain the Workers' Compensation Program in the ordinary course of business, and (b) pay any related prepetition amounts, including, without limitation, worker's compensation claims, deductibles, premiums, and fees owed as such amounts become due in the ordinary course of the Debtor's business.

    c.  <u>**"Deductions and Withholdings".**</u>

      i.    **Non-Tax Related Deductions.** During each applicable payroll period, the Debtor routinely deducts certain amounts from Employee's paychecks, including, without limitation: garnishments, child support, legally ordered deductions and miscellaneous deductions

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 5
Matter: 9519-005

(collectively, the "Deductions"). The Deductions are subsequently forwarded to the appropriate third party recipients. Generally, the Deductions are nominal or nonexistent, though do vary. As of the Petition Date, the Debtor estimate that it is holding no accrued but unpaid Deductions. To the extent that the Debtor should have collected and paid Deductions prior to the Petition Date, the Debtor seeks authority to collect and forward such Deductions to the applicable third-party recipients. In addition, the Debtor seeks authority to continue forwarding Deductions to the appropriate third-party recipients on a post-petition basis, in the ordinary course of business, and consistent with past practice. The Deductions represent earnings that judicial authorities or Employees have designated for deduction from Employee's paychecks and thus may not be property of the Debtor's estate. If the Debtor does not remit the Deductions appropriately, Employees could experience hardship, and for the judicially-ordered Deductions such as child support Employees may face legal action.

        **ii.** **Payroll Taxes.** The Debtor is required by law to withhold from Employee's paychecks amounts related to U.S. federal, state, local and foreign income taxes, as well as Social Security and Medicare taxes, in all cases, for remittance to the appropriate taxing authority (collectively, the "Withheld Amounts"). In addition, the Debtor is required by applicable statutory authority to pay from its own funds Social Security and Medicare taxes, in all cases, for remittance to the appropriate taxing authority (collectively, the "Withheld Amounts"). In addition, the Debtor is required by applicable statutory authority to pay from its own funds Social Security and Medicare taxes, and based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (the "Employer Payroll Taxes", and together with the Withheld Amounts, the "Payroll Taxes"). On average, the Debtor estimates it withholds approximately $17,000 in Payroll Taxes, including both Employee

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 6
Matter: 9519-005

and employer portions. Accordingly, by this Motion, the Debtor seeks authority to continue to honor and process all prepetition Payroll Tax obligations

**BASIS FOR RELIEF**

A. **Authority and Cause Exist for the Court to Authorize the Payment of Prepetition Claims in Circumstances Such As These.**

Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business, thus facilitating its reorganization. *See e.g., Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286, 311 (1982). In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in Bankruptcy Code sections 1107 (giving the debtor in possession the rights of trustee), 1008 (permitting continued operation of the debtor's business), 363(b) (permitting use of property of the estate in the ordinary course of the debtor's business), and 105(a) (vesting authority in the Bankruptcy Court to issues orders necessary or appropriate to carry out the provisions of the Code).

Additionally, courts have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See e.g. In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.S.D.N.Y. 1989) (finding that a sound business justification existed for payment of prepetition wages). The Debtor's proposed payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." This section empowers the Court to issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Under § 105, the court can permit pre-plan payment of

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 7
Matter: 9519-005

pre-petition obligation when essential to the continued operation of the debtor. *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr.E.D. Va. 1992).

As outlined recently by the United States Bankruptcy Court for the District of Colorado,

> The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. It follows that implicit in the duties of a Chapter 11 debtor-in-possession, as provided in Sections 1106, 1107 and 1108 of the Bankruptcy Code is the duty of such fiduciary to protect and preserve the estate, including an operating business's going-concern value. There can be little doubt that employees are the lifeblood of any operating business. Thus, actions to stabilize a debtor's relationships with its employees are critical to one of the principal goals of the Chapter 11 process: to preserve going-concern value. In many cases, preservation of going-concern value and ensuring the possibility of reorganization requires the timely payment of employee wages and benefits, including prepetition claims.

*In re Escalera Res. Co.*, 2015 Bankr. LEXIS 4003, *9-10 (Bankr. D. Colo., 2015) (internal citations omitted).

The Debtor's employees rely exclusively on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and support their families. Consequently, these Employees will be exposed to significant hardship if the Debtor is not permitted to honor its obligations for Employee Compensation. Moreover, if the Debtor is unable to satisfy such obligations, Employee morale and loyalty will be jeopardized at a time when Employee support of the company is critical. These issues were recognized by the Bankruptcy Court for the Northern District of Texas:

> Absent competent personnel, it is doubtful that any debtor would be able to operate its business as contemplated by Code § 1108. Thus … actions to stabilize a debtor's relationship with its employees are critical to one of the principal goals of chapter 11 process: to preserve going-concern value.
>
> While it is true that a debtor may be able to find replacement employees, as a practical matter no debtor can afford to lose very many of its employees, especially in a chapter 11 case's early days. In the first place, hiring a new work force immediately after the filing of a chapter 11 petition will often be difficult,

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 8
Matter: 9519-005

> and the debtor can expect the need for incentives, perhaps more costly than payment of prepetition wage and benefit claims, to attract new employees.
>
> Second, continuity of conduct of business is important in a newly filed chapter 11 case. Significant turnover of employees will not only likely lead to operational problems that negatively affect the debtor's business; also in some areas - notably the accounting and inhouse legal functions - employee turnover can inhibit a debtor's ability to perform its chapter 11 duties. Employees familiar with the debtor's operations and history will be essential to filing of schedules, anticipating operating requirements, budgeting and many other functions necessary to survival in chapter 11.
>
> Third, even if employees remain with a debtor notwithstanding non-payment of prepetition wages and benefits, it is probable that their work would be affected by their loss of income. At a minimum, an employee who has not been paid his current wages is likely to be more concerned with personal economic issues than with the debtor's survival. At worst, unpaid compensation may affect motivation, making an employee sluggish, inattentive or even obstructive in the performance of work so adversely affect the chances of a successful reorganization.

*In re Tusa-Expo Holdings, Inc., et al.,* 2008 Bankr. LEXIS 2852, *7-9 (Bankr. N.D. Tex., 2008).

The employees are critical to the continued operation of the Debtor. They perform a variety of jobs including securing and bidding on projects and contracts; obtaining inventory and other supplies necessary to perform the contracted work; performing the roadwork and fence installations, and otherwise managing the administration of the company. Even a short period of inadequate staffing places substantial completion of the contracts at risk. For all of these reasons, a sound business purpose exists to pay the Employee Obligations. In the absence of such payments, the Debtor believes that its Employees make seek alternative employment opportunities, possibly with the Debtor's competitors.

B. **A Significant Portion of the Employee Obligations are Entitled to Priority Treatment.**

All of the Employee Compensation is entitled to priority treatment under 28 U.S.C. § 507(a)(4)(A) (giving priority to wages, salaries or commissions, including vacation…sick leave pay earned within 180 days prepetition). The Debtor does not believe that any individual is

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 9
Matter: 9519-005

entitled to Employee Compensation exceeding the priority cap of $12,850.  To confirm a Chapter 11 plan, the Debtor must pay priority claims in full.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries or commissions including vacation, severance and sick leave pay earned by an individual).

Thus, granting the relief sought by this Motion only affects the timing of payments to Employees and does not negatively impact recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of Employee claims at this time enhances value for the benefit of the Debtor and all interested parties. Further, payment of certain of the Employee Obligations, specifically the Payroll Taxes and Withholdings is required by law.  These amounts principally represent the Employee's earnings that governments, the Employees and judicial authorities have designated for deduction from the Employees' paychecks.  Certain Deductions, including child support and alimony payments are not property of the Debtor's estate because the Debtor has withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. §541; *see also Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that debtors "do not own an equitable interest in property… [they] hold in trust for another" and that therefore funds held in trust are not property of the estate).  Because the Withheld Amounts and the Deductions are not property of the Debtor's estate, the Debtor requests that the Court authorize it to transmit these amounts to the appropriate parties in the ordinary course of business.

## **JURISDICTION AND VENUE**

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003(B) ARE SATISFIED

Under Bankruptcy Rule 6003, the Court may grant the relief requested in this Motion because such relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990). Courts have held that irreparable harm exists where distractions to employees would burden the reorganization. *See Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 410 (S.D.N.Y. 2007).

## REQUEST FOR WAIVER OF STAY

To implement the forgoing immediately, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## DEBTOR'S RESERVATION OF RIGHTS

Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, applicability of any law, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtor expressly reserves its right to contest any claim, applicability of any law, or an approval or assumption of any agreement or contract under section 365 of the Bankruptcy Code. The Debtor expressly reserves its rights to contest any invoice or claim with respect to any obligation described herein in accordance with applicable bankruptcy and non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an

admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

### **RELIEF REQUESTED**

By this Motion, the Debtor seeks entry of an Order authorizing it to pay prepetition claims, honor obligations and/or continue certain employee-related programs, in the ordinary course of business, including with respect to:

a. Employee Compensation, including Unpaid Wages, Employee Draws, Reimbursable Expenses, Vacation Time and Sick Leave; and

b. Deductions and Payroll Taxes (each, as defined herein)

c. To enable the Debtor to carry out the relief requested, the Debtor also requests that the Court authorize all applicable banks, financial institutions to receive, process, honor and pay all checks presented for payment and all electronic payment requests made by the Debtor related to the Employee Obligations, whether such checks were presented or electronic payment requests were submitted prior to or after the petition date.

d. To the extent any of the Debtor's Employees assert claims under the Worker's Compensation Program, the Debtor further request that the Court modify the automatic stay under § 362 of the Bankruptcy Code to permit such Employees to proceed with their claims under the Workers' Compensation Program. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

DATED this 18th day of August, 2017.

/s/ Matt Christensen
MATTHEW T. CHRISTENSEN
Attorney for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2017, a true and correct copy of the foregoing Motion was filed electronically and upon such filing the CM/ECF registered participants were served by electronic means as more fully reflected on the Notice of Electronic Filing. I further certify that on said date the twenty largest unsecured creditors (described further on the attached **Exhibit B**) and any parties listed below, were served by depositing copies thereof in the United States Mail with first-class postage prepaid, enclosed in envelopes addressed to said creditors at their respective addresses.

In addition, I certify that a copy of this Motion was served on the following parties via email:

| | |
|---|---|
| KeyBank, N.A. | Ronald_W_Goss@keybank.com |
| Bank of the West | kgm@givenspursley.com |
| Berkley Surety Company | jdsokol@lawssl.com |
| Channel Partners, LLC | lance.brown-ochs@channelpartnersllc.com |

      /s/  Matt Christensen
Matthew T. Christensen

## EXHIBIT A

### Chart of Employees

| Employee Name | Approximate pre-petition Amount Owed | Role in Company |
|---|---|---|
| Ashlyn Miller-Burgess | $250.00 | Laborer |
| Christina Chiaberta | $250.00 | Laborer |
| Christopher Henry | $608.00 | Laborer |
| Dallas Morlock | $730.00 | Foreman/CDL driver |
| Donna McCue | $350.00 | Bookkeeper/payroll/collections |
| Grayson Barrutia | $520.00 | Laborer |
| Greg Harp | $424.00 | Owner/Manager/CDL driver |
| Jack Waugh | $456.00 | Striping superintendent/CDL driver |
| Jacob Upchurch | $365.00 | Laborer |
| Jason Collins | $718.00 | Shop Manager/CDL driver |
| Jay Heitz | $765.00 | Foreman/CDL driver |
| Jeffery Harp | $236.00 | Striping laborer/CDL driver |
| Jeromy Stamper | $330.00 | Laborer/equipment operator |
| Ken Balliet | $470.00 | Project Manager/CDL driver |
| Marcus Boyer | $590.00 | Laborer/potential supervisor |
| Matthew Harp | $640.00 | Laborer and equipment operator/CDL driver |
| Nathan S. Hatch | $610.00 | Laborer/equipment operator |
| Paul A. Barrutia | $514.00 | Fencing Project Manager/CDL driver |
| Peggy Harp | $180.00 | General office assistant |
| Phillip Kerr | $250.00 | Laborer |
| Stephanie Henry | $658.00 | Laborer/equipment operator/CDL driver |
| Tamara Morlock | $440.00 | Laborer |
| **TOTAL** | $10,354.00 | |

MOTION TO PAY PRE-PETITION WAGE AND OTHER CLAIMS – PAGE 14
Matter: 9519-005

# EXHIBIT B

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | **Pavement Markings Northwest, Inc.** |
| United States Bankruptcy Court for the: | **DISTRICT OF IDAHO** |
| Case number (if known): | **17-01071** |

■ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| Ally Financial<br>PO Box 8125<br>Cockeysville, MD 21030 | | 2016 Dodge 5500 Crew Cab | | $49,696.00 | $40,000.00 | $9,696.00 |
| Ally Financial<br>PO Box 8125<br>Cockeysville, MD 21030 | | 2016 Dodge RAM 5500 Crew | | $49,315.00 | $40,000.00 | $9,315.00 |
| Atlas Sand & Rock, Inc.<br>4341 Snake River Avenue<br>Lewiston, ID 83501 | | Services rendered | | | | $36,355.40 |
| Braun-Jensen, Inc.<br>509 S. Ninth Street<br>Payette, ID 83661 | | Services rendered | | | | $10,000.00 |
| Chase<br>P.O. Box 15548<br>Wilmington, DE 19886-5548 | | Credit card | | | | $33,084.97 |
| Chrysler Capital<br>PO Box 961272<br>Fort Worth, TX 76161 | | 2016 Dodge RAM 3500 1 Ton Rover | | $40,167.00 | $30,000.00 | $10,167.00 |
| Ennis Paint<br>115 Todd Court<br>Thomasville, NC 27360 | | Paint | | | | $248,807.90 |
| Farwest Steel Corp.<br>4421 Enterprise<br>Boise, ID 83705 | | Services rendered | | | | $7,908.95 |
| Flint Trading, Inc.<br>115 Todd Court<br>Thomasville, NC 27360 | | Services rendered | | | | $295,895.28 |

Official form 204   Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims   page 1

Debtor  **Pavement Markings Northwest, Inc.**  Case number *(if known)* **17-01071**
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| **Idaho State Tax Commission**<br>P.O. Box 36<br>Boise, ID 83722-0410 | | taxes | | | | $9,355.00 |
| **Interstate Signways**<br>7415 Lindsey Road<br>Little Rock, AR 72206 | | Services rendered | | | | $41,385.16 |
| **John Deere Const. & Forestry**<br>6400 NW 68th St.<br>P.O. Box 6800<br>Johnston, IA 50131 | | 2016 John Deere Mini Excavator | | $63,944.00 | $50,000.00 | $13,944.00 |
| **Olsen Wheeler CPA**<br>839 E. Winding Creek, Drive<br>Eagle, ID 83616 | | Services rendered | | | | $14,547.50 |
| **PetroCard Systems, Inc**<br>730 S. Central Avenue S<br>Kent, WA 98032 | | Fuel | | | | $8,117.08 |
| **Steve Regan Co.**<br>3801 US-20<br>Caldwell, ID 83605 | | Services rendered | | | | $17,611.48 |
| **Steven Neighbors**<br>5598 N. Eagle Road Suite 102<br>Boise, ID 83713 | | Promissory Note | | | | $216,219.18 |
| **Strategic & Operational Sol.**<br>701 S. Allen St. Ste 101<br>Meridian, ID 83642 | | Services rendered | | | | $13,708.22 |
| **United States Treasury**<br>1500 Pennsylvania Avenue, NW<br>Washington, DC 20220 | | Taxes | | | | $29,213.73 |
| **Walters Ready Mix, Inc**<br>342 W. Fourth North<br>Rexburg, ID 83440 | | Services rendered | | | | $11,249.86 |
| **Zumar Industries Inc.**<br>12015 Steele Street S<br>Tacoma, WA 98444 | | Services rendered | | | | $10,955.92 |